UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LILLIAN C. THOMAS,

                                Plaintiff,                        18-CV-88Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #25.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on April 16, 2014, alleging disability beginning June 1, 2013, when she was 24 years old, due to fibromyalgia. Dkt. #8, p.96.

On October 14, 2016, plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert, Lanell Hall, before Administrative Law Judge ("ALJ"), Paul Georger. Dkt. #8, pp.54-95.

Plaintiff testified that she completed an Associate's degree in liberal arts and was halfway through the degree requirements for her physical therapist assistant degree, but had to drop out because she was too tired after classes to study, causing her grades to slip. Dkt. #8, pp.65 & 82. Plaintiff described her pain as "a constant ache in my whole body and joints as well and any type of physical activity just makes it worse." Dkt. #8, pp.72-73. Plaintiff testified that her medication relieves some of the pain, but testified that she experienced "a constant ache in my muscles." Dkt. #8, p.74. Plaintiff testified that she attempted physical therapy for a month several years ago, but it only increased her pain and fatigue. Dkt. #8, p.72.

Plaintiff testified that she is unable to drive for more than a couple of hours because her arms start to hurt. Dkt. #8, p.64. She is able to walk about an hour, maximum, and stand about a half hour per day. Dkt. #8, p.74. She is able to reach and grab things as long as they aren't heavy, but can only drive and eat with her right arm, even though she is left-handed. Dkt. #8, pp.74-75. She testified that she could lift her ten-pound dog, but could only carry him for a few minutes . Dkt. #8, p.75. She is able to sit for approximately three hours before she needs to get up and stretch to loosen up her muscles and joints. Dkt. #8, p.76. She also experiences headaches every day, sometimes so bad that she has to stay in bed. Dkt. #8, p.76. She experiences "fibro fog," where she forgets what she was about to say and becomes confused. Dkt. #8, p.77. She was on medication for depression and experienced "some anxiety." Dkt. #8, pp.77 & 84. She does not sleep well because of the pain and has to switch positions frequently because her joints become sore. Dkt. #8, p.78.

Plaintiff is able to cook most of the time, but her boyfriend does all of the laundry and most of the cleaning. Dkt. #8, pp.79-80. She can grocery shop, but her boyfriend carries all the grocery bags. Dkt. #8, p.80. She used to like to hike and attend concerts, but she doesn't leave the house very much anymore because she can't be on her feet. Dkt. #8, p.81.

Plaintiff worked fifteen to thirty hours per week at the Salvation Army until July of 2015, but had to quit because her legs were too sore despite being allowed to sit half the time and her arms were sore from scanning items. Dkt. #8, pp.66 & 69. She testified that her hours varied based upon her fatigue or muscle pain, which caused her to call off from work anywhere from two to four days per month. Dkt. #8, p.85. She attempted to work at Target, but had to quit because she was not allowed to sit. Dkt. #8, p.67. From July of 2015 until July of 2016, plaintiff worked selling items on Ebay: taking pictures, doing all the computer work and shipping items to customers. Dkt. #8, p.67. She began working 30 hours per week, but had to cut back to 20 hours a week after three months because of her pain and fatigue. Dkt. #8, p.68. Six months later, she cut back to ten hours per week and after about three months, had to stop working because she "couldn't do it anymore." Dkt. #8, p.68. She testified that her whole body "gets sore so quickly," explaining that if she walked for an hour, she could barely walk for three days afterwards and that if she cleaned for an hour, so could barely move for three days. Dkt. #8, p.71.

When asked to assume an individual with the residual functional capacity ("RFC"), to perform light work,[1] the vocational expert testified that plaintiff would be able to perform her past relevant work as a cashier, fast food worker and sales attendant. Dkt. #8, p.88. When asked to assume an individual with the RFC to perform light work with the additional limitation that she could only stand for 30 minutes, walk a quarter mile or less, could never use foot or hand controls bilaterally, and would be absent two day per month, the vocational expert testified that based upon her experience, "anything more than one day off per month or more than eight times per year would be work preclusive." Dkt. #8, p.90. When asked to assume less than light exertional level, the vocational expert testified that plaintiff would be able to perform sedentary work as an addresser, assemble or toy stuffer. Dkt. #8, p.90.

The ALJ rendered a decision that plaintiff was not disabled on February 3, 2017. Dkt. #7, p.23. The Appeals Council denied review on December 8, 2017. Dkt. #8, p.7. Plaintiff commenced this action seeking review of the Commissioner's final decision on January 17, 2018. Dkt. #1.

---

[1] Light work involves lifting no more than 20 pounds at a time and occasionally lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. Is someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of

impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2013; (2) plaintiff's fibromyalgia constitutes a severe impairment; (3) plaintiff's impairment did not meet or equal any listed impairment; (4) plaintiff retained the capacity to perform light work which required lifting, carrying, pushing and pulling no more than 20 pounds occasionally and 10 pounds frequently and could sit, stand and walk about 6 hours of an 8-hour workday; and (5) plaintiff was able to perform her past relevant work as a cashier and fast food restaurant counter clerk and was not, therefore, disabled within the meaning of the SSA. Dkt. #8, pp.25-34.

Plaintiff argues that the ALJ erred in his determination that plaintiff's depression and anxiety were non-severe and that he failed to consider the functional effects of these diagnoses when making his RFC determination. Dkt. #19-1, pp.14-17. Plaintiff also argues that the ALJ failed to properly evaluate Dr. Weingarten's treating medical opinions. Dkt. #19-1, pp.17-21. Specifically, plaintiff argues that the ALJ failed to account for Dr. Weingarten's opinion that plaintiff had difficulty with prolonged sitting and standing and repetitive motions due to pain. Dkt. #19-1, p.19. Plaintiff also argues that the ALJ failed to account for Dr. Weingarten's opinion that plaintiff would likely be absent from work two days per month, which was supported by her testimony that she was removed from her college program due to absences and called off from her part-time work two-four times per month. Dkt. #19-1, pp.19-20. Plaintiff notes that the VE testified that plaintiff would not be able to sustain employment if she was absent more than two days per month. Dkt. #19-1, p.21. Finally, plaintiff argues that the consultative examination was stale, as it was conducted before plaintiff's symptoms deteriorated. Dkt. #19-1, p.21.

The Commissioner responds that the plaintiff failed to meet her burden of establishing that her symptoms of anxiety and depression affected her ability to perform basic work activities and that the ALJ properly utilized the special technique for evaluating mental impairments in determining that plaintiff's anxiety and depression were not severe. Dkt. #23-1, pp.15-23. The Commissioner further responds that the ALJ's determination that plaintiff retains the capacity to perform light work is supported by substantial evidence. Dkt. #23-1, pp.23-31.

### Severity of Impairment

An impairment is severe if it significantly limits physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). Conversely, an impairment is not severe "if it is a slight abnormality "that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner." *Matejka v. Barnhart*, 386 F. Supp.2d 198, 208-09 (W.D.N.Y. 2005), *citing* SSR 96-3p (rescinded effective June 14, 2018 as duplicative of SSR 16-3p). Evaluation of the severity of mental impairments follows a special technique which considers four broad functional areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentration, persistence or maintaining pace; and (4) adapting and managing oneself. 20 C.F.R. § 404.1520a(c)(3)(applicable to claims pending as of January 1, 2017). If the degree of limitation in each area is rated none or mild, as opposed to moderate, marked or extreme, the mental impairment is generally considered not severe. 20 C.F.R. § 404.1520a(c)(4) & (d)(1). The fact that a person has been diagnosed or treated for a mental impairment is not, by itself, sufficient to render a condition severe. *Flanigan v. Colvin*, 21 F. Supp.3d 285, 300 (S.D.N.Y. 2014); *See Serianni v. Astrue*, No. 07-CV-250, 2010 WL 786305, at *3 (N.D.N.Y. Mar. 1, 2010) (diagnosis of depression, without more, does not suggest severe impairment).

In the instant case, plaintiff did not allege disability based upon anxiety or depression in her application for disability benefits or her consultative examination. Dkt. #8, pp.195, 288. Plaintiff's medical records reveal a mildly depressed mood (Dkt. #8,

p.255), appropriate mood (Dkt. #8, pp.260, 268, 271), normal mood (Dkt. #8, pp. 439, 445, 455, 470, 475, 478, 483, 489, 496), and good mood (Dkt. #8, pp.300, 307, 315). On June 25, 2014, plaintiff reported that her mood was stable despite the stress of ending a long-term relationship. Dkt. #8, p.311. On April 15, 2015, plaintiff denied to her primary care provider any lack of interest or pleasure in doing things or feeling down, depressed or hopeless. Dkt. #8, p.487. On June 30, 2015, July 20, 2015, September 16, 2015, October 23, 2015 and December 18, 2015, plaintiff reported that her mood was not affected by her fibromyalgia symptoms and was observed to have a pleasant and appropriate mood and affect. Dkt. #8, pp.397, 399, 402, 404, 407, 409, 413, 415-416. Screening for clinical depression was documented as negative by the New York Spine & Wellness Center between June 30, 2015 and December 18, 2015. Dkt. #8, pp.400, 405, 409 & 418. On February 15, 2016, however, plaintiff started weeping after being denied stronger pain medication and declining her physician's suggestion to seek psychological counseling due to decreased mood secondary to loss of function. Dkt. #8, pp.394 & 399. Plaintiff had previously been referred for a psychological consult "for cognitive restructuring and coping strategies due to pain." Dkt. #8, p.417.

   On May 19, 2016, plaintiff presented to her primary care physician with complaints that she was feeling depressed and suffering from anxiety, explaining that it was more anxiety than depression and that her anxiety flares when she is driving. Dkt. #8, p.463. Plaintiff was prescribed an antidepressant (Dkt. #8, p.464), and on a subsequent visit on June 23, 2016, was determined to be stable. Dkt. #8, p.455. She was subsequently switched to another antidepressant after noting increased irritability

and snapping at people (Dkt. #8, p.451), after which she reported that her mood improved. Dkt. #8, p.444-45. On September 22, 2016, plaintiff's antidepressant was switched a third time after she complained that her medication had not been working well and that she was experiencing more anxiety and increased depression, explaining that she was having difficulty finding a job despite applying for 38 jobs. Dkt. #8, pp.437-38. On September 30, 2016, plaintiff's rheumatologist, Dr. Weingarten, completed a Fibromyalgia Medical Source Statement in which he acknowledged plaintiff's diagnosis of anxiety and depression but failed to identify anxiety or depression on the check list of patient symptoms and in which he opined that plaintiff was "[c]apable of moderate stress - normal work." Dkt. #8, p.317. Throughout his treatment of plaintiff, Dr. Weingarten noted plaintiff's activities of daily living as unlimited. Dkt. #8, pp..279, 283, 285, 292, 300, 307, 309, 311, 313 & 315. At her hearing on October 14, 2016, plaintiff only mentioned her depression and anxiety in passing (Dkt. #8, pp.76-78 & 84), focusing instead on the physical pain and fatigue from her fibromyalgia. As the ALJ noted, despite the allegations of anxiety and depression, plaintiff attended college courses to become a physical therapy assistant, worked up to 30 hours per week, continued to seek employment, maintained relationships with family and friends, drove and tended to her personal needs. Dkt. #8, pp. 27-29.

Plaintiff's activities of daily living, combined with the medical evidence of record, support the ALJ's determination that plaintiff's symptoms of anxiety and depression cause no more than mild limitations in plaintiff's functional capacity to perform basic work activity and is not, therefore, severe. *See Giambrione v. Colvin,* No.

15-CV-6023, 2015 WL 7571912, at *4 (W.D.N.Y. Nov. 24, 2015 (substantial evidence supports ALJ's determination that plaintiff's depression was non-severe where mental status examinations were consistently unremarkable with the exception of a depressed or anxious mood and no functional limitations are noted in treatment notes); *Ruback v. Astrue*, No. 6:11-CV-770, 2012 WL 2120473, at *5 (N.D.N.Y. June 11, 2012) (substantial evidence to support the ALJ's decision that plaintiff's anxiety and depression were non-severe impairments that did not prevent her from engaging in substantial gainful activity where plaintiff failed to mention anxiety and depression as disabling conditions in her application; plaintiff did not complain of or seek treatment for anxiety and depression for nearly two years of her pending application for disability; her symptoms were diagnosed and effectively treated with medication prescribed by her family practitioner; and no provider opined that her condition was severe or that it would prohibit plaintiff from performing basic work activities); *Serianni*, 2010 WL 786305, at *5 ("while the record establishes that plaintiff arguably suffered from some depression and anxiety, there is no evidence that the condition limited her ability to function in any way."); See also *Jeffords v. Berryhill*, No. 17-CV-77, 2018 WL 6177269, at *2 (W.D.N.Y. Nov. 27, 2018 ("alleged functional impairment must not only be severe but must also meet the 12-month durational requirement.").

Weingarten Opinion Evidence

On May 14, 2014, after reporting that she was working 30 hours per week and had been terminated from her physical therapy assistant program because she was missing too many classes, Dr. Weingarten encouraged plaintiff "to look in to other

occupations she would tolerate . . . as patients who continue to work generally do better in the long run." Dkt. #8, p.313. On June 3, 2015, Dr. Weingarten completed a Medical Report Form for the New York State Education Department's Adult Career and Continuing Education Services - Vocational Rehabilitation ("Access-VR Program"), acknowledging that plaintiff has pain with prolonged repetitive motions and prolonged sitting and standing, but stating that "it is difficult to identify specific conditions" plaintiff should avoid. Dkt. #8, pp.298-99. The Medical Report Form expressly released plaintiff to full-time work. Dkt. #8, p.299. On September 30, 2016, Dr. Weingarten completed a Fibromyalgia Medical Source Statement in which he declined to opine as to plaintiff's specific functional limitations, but opined that, although it was "very difficult to determine," plaintiff would likely be absent from work about two days per month. Dkt. #8, p.320. The ALJ noted the absence of a function by function assessment of plaintiff's ability to perform work activity and found the medical evidence, including Dr. Weingarten's treatment notes, "generally consistent with [plaintiff's] ability to work, except for Dr. Weingarten's statement regarding how often [plaintiff] would miss work." Dkt. #8, p.32. The ALJ afforded that part of Dr. Weingarten's opinion "little weight since it is not consistent with the fact that claimant was able to work 15 hours while attending college, until late 2014, and later work 30 hours per week as a cashier from late 2014 through May 2016 without reporting any difficulties in performing the work." Dkt. #8, p.32. The ALJ also noted that Dr. Weingarten had released plaintiff to work full time and that his treatment records consistently noted plaintiff's activities of daily living as unlimited. Dkt. #8, p.32; See Dkt. #8 pp..279, 283, 285, 292, 300, 307, 309, 311, 313 & 315, 325. Thus, the ALJ provided good reasons for affording less than controlling

weight to Dr. Weingarten's estimate of plaintiff's ability to maintain adequate attendance. *See Clark v. Comm'r of Soc. Sec'y*, 143 F.3d 115, 118 (2nd Cir. 1998).

Substantial Evidence

The ALJ's determination that plaintiff was capable of light duty work is supported by substantial evidence, including the May 2014 opinion of the consultant physician, that plaintiff has mild limitations with repetitive heavy lifting, bending, carrying, pushing and pulling (Dkt. #8, p.290); plaintiff's report that she cooked three time per week, cleaned and washed laundry one day a week, and shopped every two weeks (Dkt. #8, p.288); plaintiff's hearing testimony that she is able to cook most of the time, can grocery shop and can drive (Dkt. #8, pp.64 & 81); evidence that plaintiff engaged in significant work activity, attended college classes and continued to seek employment (Dkt. #8, pp. 285, 313, 321, 323, 327, 329, 396, 401, 406, 413, 421, 438 & 491); plaintiff's report of a trip to Scotland in August of 2014 (Dkt. #8, p.309); plaintiff's cessation of medication for several months in the Fall of 2014 because her fibromyalgia symptoms had improved (Dkt. #8, pp.307 & 309); notations in medical records that plaintiff's activities of daily living were unlimited (Dkt. #8 pp..279, 283, 285, 292, 300, 307, 309, 311, 313 & 315); and repeated recommendations from her rheumatologist, pain management specialist and primary care provider that plaintiff increase her physical activity. Dkt. #8, pp.283, 285, 295, 300, 307, 313, 328, 329, 394, 399, 404, 409, 418. Although the consultant physician's opinion was rendered more than two and half years before the ALJ's decision, plaintiff's symptoms and physical examinations are generally consistent throughout the medical record, with the exception of the period in

which plaintiff ceased and resumed medication. *See Andriaccio v. Berryhill,* 18-CV-84, 2019 WL 1198357, at *3 (W.D.N.Y. Mar. 14, 2019) ("a more dated medical opinion may constitute substantial evidence where it is supported by the record as a whole notwithstanding its age.").

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #19), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #23), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
                **September 13, 2019**

                                          *S/ H. Kenneth Schroeder, Jr.*
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**